[Cite as *State v. Kinney*, 2018-Ohio-404.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160415 |
| | | TRIAL NO. B-1506803-C |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| DARRELL KINNEY, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: February 2, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger Kirk*, for Defendant-Appellant.

**DETERS, Judge.**

{¶1} Defendant-appellant Darrell Kinney pleaded guilty to two counts of aggravated burglary under R.C. 2911.11(A)(1), two counts of aggravated robbery under R.C. 2911.01(A)(1), two counts of kidnapping under R.C. 2905.01(A)(2), one count of carrying a concealed weapon under R.C. 2923.12(A)(2), and one count of vandalism under R.C. 2909.05(B)(2), in connection with an armed home invasion. The aggravated-robbery, aggravated-burglary, and kidnapping offenses each carried a three-year gun specification.

{¶2} In this appeal, Kinney challenges the voluntariness of his guilty pleas, and the trial court's imposition of a 34-year aggregate prison sentence. Because we conclude the trial court failed to substantially comply with Crim.R. 11(C), we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion and the law.

### Factual and Procedural Posture

{¶3} Kinney was indicted along with two codefendants for multiple felony offenses stemming from his involvement in the armed home invasion of a prominent local attorney, Stanley Chesley, and his wife, Susan Dlott, a federal district court judge. Kinney was charged with three counts of aggravated burglary, three counts of aggravated robbery, one count of robbery, four counts of kidnapping, two counts of felonious assault, one count of having a weapon while under a disability, one count of carrying a concealed weapon, one count of receiving stolen property, one count of vandalism, and one count of escape. The aggravated-burglary, aggravated-robbery, robbery, kidnapping, and felonious-assault offenses were each accompanied by one-year and three-year gun specifications.

{¶4}     Kinney withdrew his not guilty pleas and pleaded guilty to two counts of aggravated burglary, two counts of aggravated robbery, two counts of kidnapping and the accompanying three-year gun specifications, carrying a concealed weapon, and vandalism.   In exchange for his guilty pleas, the state dismissed the remaining charges and gun specifications.

{¶5}     Thereafter, the trial court engaged Kinney in a Crim.R. 11 dialogue on the record.   After the prosecuting attorney read the facts from the indictment, Kinney indicated that he understood the charges against him, that no one had threatened him to enter the plea, and that he was pleading guilty of his own free will.

{¶6}     The trial court told Kinney that the two aggravated-burglary, two aggravated-robbery, and two kidnapping counts were first-degree felonies and that each offense carried a potential maximum sentence of three to 11 years in prison and a maximum fine of $20,000.  It further informed Kinney that he was also pleading guilty to a three-year gun specification for each of these first-degree-felony charges, that the three-year specifications each carried mandatory prison time, and that the time on the specifications was required to be served consecutively and prior to any time imposed on the underlying first-degree felonies.

{¶7}     The trial court also informed Kinney that the carrying-a-concealed-weapon count was a fourth-degree felony that carried a maximum term of six to 18 months in prison and a $5,000 fine, and that the vandalism count was a fifth-degree felony that carried a six-to-12 month prison term and a $2,500 fine.  The court then told Kinney that he would be subject to five years of postrelease control and explained the penalties for violating postrelease control.  Kinney answered in the affirmative when the trial court asked if he understood the charges against him and the possible penalties. The court further explained that " 'probation' was not a possibility in the case."

{¶8} Next, the trial court inquired whether Kinney had read and understood the guilty plea form. Kinney indicated he had read and understood the written guilty plea form. The trial court also questioned whether Kinney had the opportunity to discuss the pleas with his counsel. Kinney answered affirmatively. Then the court asked Kinney if he was currently on parole. When Kinney responded affirmatively, the trial court informed Kinney that by pleading guilty, he could violate his parole, and that any prison time imposed on the parole violation could be additional to the sentence imposed in the current case.

{¶9} The trial court next explained to Kinney the constitutional rights he would be waiving by pleading guilty, and Kinney acknowledged that he understood these rights. The trial court asked Kinney if he had ingested any drugs or medication in the last 24 hours, and Kinney stated he was on prescription medication that helped him to think clearer. The trial court asked defense counsel if Kinney was entering the pleas knowingly, voluntarily and intelligently. Counsel replied affirmatively. The trial court then accepted Kinney's guilty pleas as voluntary.

{¶10} Later that day, Kinney was brought back before the trial court. The trial court advised Kinney that the written guilty plea form was wrong with respect to the first-degree felonies. The plea form had incorrectly stated that none of the time for the first-degree felonies was "mandatory" prison time. The court explained that a mandatory prison term had to be imposed for the underlying counts associated with the gun specifications to which he had pleaded guilty. The following exchange then took place on the record:

Kinney: See I didn't even know that, ma'am.

Defense counsel: Yeah, well, it goes along with exactly what we talked about. Nothing will change as far as sentencing. Nothing will change as far as what you plead to —

The Court: Exactly.

Defense counsel: — because we knew you weren't going to get community control. But we just had to —

Kinney: I thought the only mandatory time was the gun specs.

The Court: The gun specs. Well, the gun specs have to be run consecutive to something, so I have to impose a sentence on the underlying counts.

{¶11} Defense counsel advised Kinney that nothing would change as far as his sentencing, because Kinney knew he was not going to get community control.

Defense counsel: Remember how we talked about how the minimum sentence in the best possible way could be six years? The three years on the gun spec. So that's all we're talking about is to clarify that.

Kinney: So it's mandatory time on my original charges running consecutive with the gun spec time?

Defense counsel: Yes.

Kinney: So that's more time isn't it?

Defense counsel: No.

The Court: No. The number that you discussed with your lawyer it still comes out the same. We just failed to write it on the form. There is no additional time we are informing you about right now.

Defense counsel: You heard it from the judge. So it doesn't affect the time we are talking about. Is that correct, Your Honor?

5

The Court:  That's correct.

{¶12}   The court, the prosecuting attorney, defense counsel, and Kinney then engaged in a lengthy discussion about whether the sentences on the underlying charges could be run concurrently or consecutively to each other and to the gun specifications. The court explained that it could impose any time on the six underlying first-degree-felony offenses concurrently, so Kinney would just get one three-year sentence.  But the court explained that each of the six underlying charges had a three-year gun specification.   So the 18 years on the gun specifications would have to be served consecutive to the three-year minimum sentence on the underlying offense, if the court would impose that sentence.

Kinney: It does make it clear, but I was under, you know a whole other thought process.  I thought after 18 I could file for this and come home.

The Court:  You're right.  You could file.  But there is – well –

Kinney:  But the other mandatory time.  I'll have to wait longer.

Defense counsel: Well, I think we're all talking about the same thing.   It doesn't change at all what we talked about for a possible sentence at all.  That's the most important thing. We just had to clarify on the record what it meant.

Kinney:  I didn't sign for that, though.

Defense counsel: Yeah, you did, actually.

Kinney: I thought the only mandatory time I was facing was my gun specs.  I didn't know – you know, that's the only thing I have been basing my whole thing about.

Defense counsel: * * * Everything we talked about is still the same.

Kinney: I'm kind of special. I'm sorry.

Defense counsel: Everything we talked about is still the same. You have to do your gun specs. That's still the same. But the Judge had just told you she could run them concurrently, the underlying charges, not the gun specs. And that will give you three years.

Assistant prosecuting attorney: Yeah. It doesn't have any impact on judicial release.

Defense counsel: It doesn't have any impact on anything we talked about this morning. We just had to clarify and put it on the record.

Kinney: I didn't sign for that.

Defense counsel: Yeah, you did. We're just talking about the same thing. We're just putting on the record that you have to do at least three years on the underlying charge. But when we talked about our possible sentences, we included that.

The Court: When you left here this morning, what did you think was the minimum time you could get on all this?

Kinney: I knew that the mandatory time was 18. And * * * my old attorney, he had said six years would be the minimum. But then I had talked to the prosecutor and he said something totally different.

Assistant prosecuting attorney: Well, 18 is correct.

The Court: They're right. The minimum of 18 — and that has not changed by this conversation that we just had. The minimum is 18. Okay?

Kinney: Yes ma'am.

The Court: And then you can file for whatever you want for – if I give you more than that. You have to serve those 18 because that's the gun specifications.

Kinney: Right.

The Court: Whether I run the underlying charges concurrently or consecutively, we'll decide that at sentencing. But that 18 has not changed as far as once you serve that 18 mandatory, you can file for judicial release, post you know, whatever it is that they offer at that point. You know, they call them oatmeal cookie days, your good time days, and stuff like that. You got to serve the 18 for the gun specifications and then kind of the gate opens in the sense of you can file for things, you can earn credit, all of that after the 18 is served. So that has not changed at all.

The Court: So you're still good with all of this?

Kinney: Not for real. Like, I was under a whole 'nother impression for real, but like, I mean, I understand everything that is being said right now. But I didn't originally sign knowing that I had mandatory time on my other charges. I thought personally that after 18 – after 18 I would be able to come – you know, and you just said that I would still be able to, but I didn't know about the whole – the three years here, three years there, and —

Defense counsel: Do you understand it now?

Kinney: I definitely understand it. But I'm not okay with it. I didn't understand. I didn't sign for that.

Defense counsel: Well you can withdraw your plea and go to trial.

Kinney: I don't want to go to trial.

8

Defense counsel: Well, then there you go. If you don't want to go to trial, this is the plea. It's exactly like we explained it to you. We just had to clarify it on the record. So you want to stay with it.

Kinney: I still feel like I signed something without knowing everything that was –what was going on.

Defense counsel: But now it has been explained to you. Do you want --.

Kinney: It's already happened. You know, I already done signed it.

Defense counsel: Do you want to go ahead with this? You've already signed it and we have already explained it to you now twice. Do you want to go ahead with it?

Kinney: No.

The Court: You want to tear up the plea and go to trial?

Kinney: I don't want to go to trial but I don't –

Defense counsel: That is what is going to happen if you don't-

The Court: Those are your only options. The deal isn't going to get any better. The State is offering this, exactly what you plead to this morning. Nothing has changed. So it's either stick with this or go to trial. Those are your only options.

Kinney: It was pointless bringing me down here.

Defense counsel: No, it wasn't because we –

Kinney: I understand that you all got to bring it to my knowledge, but – it's not going to change nothing.

Defense counsel: Right.

Kinney:  It's too late.  I already signed it.

Defense counsel:  It's not changing anything.  So you want – we're going to go ahead with it. Okay?  All right.  I think we're going to go ahead with it, Your Honor.  Thank you.

The Court: Very good, thank you.

Defense Counsel:  All right.  I'll see you later.  We'll get ready then for sentencing.   (Emphasis added.)

{¶13}    The record reflects that the guilty plea form was changed.  Under the heading for mandatory prison term, the number zero was whited out for each of the first-degree felonies and the number three was written in.  Defense counsel placed his initials next to the changes on the plea form.  Kinney, however, did not re-sign the plea form following these changes.  Thus, the amended guilty plea form stated that each first-degree felony carried a prison term of three to 11 years, but that only three years of that prison term was mandatory time.  The plea form further provided that Kinney would be ineligible for judicial release for any mandatory term the trial court imposed.  According to the plea form, Kinney was subject to a mandatory three-year prison term for each of the six first-degree felonies and a three-year mandatory prison term for each of the accompanying firearm specifications, for a total of 36 years of mandatory prison time.

{¶14}    Prior to sentencing, the state filed a sentencing memorandum.  The state asserted that Kinney had a prior conviction for burglary, a second-degree felony, and thus, pursuant to R.C. 2929.13(F)(6) he was subject to a mandatory prison term for all six of the first-degree felonies.

{¶15}    The trial court sentenced Kinney to nine years in prison for each aggravated-burglary count, to be served consecutively to the accompanying three-year gun specification, to nine years in prison for each aggravated-robbery count to be served

10

consecutively to the accompanying three-year gun specification, to nine years for each kidnapping count to be served consecutively to the accompanying gun specification, to 18 months for carrying a concealed weapon, and to 12 months for vandalism.

{¶16} The trial court ordered the nine-year sentences for counts one, the aggravated burglary, count four, the aggravated robbery, and count eight, the kidnapping which involved Chesley, and the 12-month sentence on vandalism to be served consecutively to each other and consecutively to the three-year gun specifications accompanying counts one and eight. The sentences on the remaining counts, including the gun specifications, were run concurrently with each other and with the sentences on counts, one, four, eight, and 18. The total aggregate sentence was 34 years, 33 years of which was mandatory prison time.

### Kinney's Guilty Pleas

{¶17} In his first assignment of error, Kinney argues that his guilty pleas were involuntarily made because the trial court failed to comply with Crim.R. 11.

{¶18} When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Before accepting a guilty plea in a felony case, a trial court must inform the defendant that he is waiving certain constitutional rights, including the privilege against compulsory self-incrimination, the right to a jury trial, the right to confront his accusers, and the right of compulsory process of witnesses. *See State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 12. In addition to these constitutional rights, the trial court is also required to determine that the defendant understands the nature of the charge, the maximum penalty involved, and the effect of the plea. Crim.R. 11(C)(2)(a-b); *Jones* at ¶ 12.

{¶19}     While the trial court must strictly comply with Crim.R. 11 when notifying a defendant of the constitutional rights set forth in the rule, it need only substantially comply when informing the defendant of the nonconstitutional ones.  *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 14 and 18.  "Substantial compliance means that under the totality of the circumstances the defendant understands the implications of his plea and the rights he is waiving."  *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).  A trial court's "failure to comply with nonconstitutional rights will not invalidate a plea unless the defendant thereby suffered prejudice."  *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12. The test for prejudice is whether the plea would have otherwise been made.  *Id.*

{¶20}     Kinney argues that his guilty pleas were not voluntarily, intelligently, or knowingly made, because he expressed repeated confusion about the potential maximum sentence and whether the underlying charges carried mandatory sentences as opposed to the mandatory nature of the gun specifications.

{¶21}     A prison term is presumed for a first- or second-degree felony.  R.C. 2929.13(D)(1).  A trial court can impose community control if it makes certain findings. R.C. 2929.13(D)(2).  A trial court can only impose community control if the offender is not required to serve a mandatory prison term.   A mandatory prison term also affects a defendant's ability to seek judicial release. R.C. 2929.20(A)(1)(a), (B), and (C).   A defendant serving a mandatory prison term is ineligible for judicial release.  *See State v. Ware*, 141 Ohio St.3d 160, 2014-Ohio-5201, 22 N.E.3d 1082, ¶ 11.

{¶22}     This court has held that the trial court is under no obligation to inform a defendant regarding his eligibility for judicial release.  *See State v. Simmons*, 1st Dist. Hamilton No. C-050817, 2006-Ohio-5760, ¶ 13.  However, if a defendant who pleads guilty is misled as to whether he would be eligible for judicial release or when he

becomes eligible to apply for judicial release, other courts have held that the defendant's guilty plea was invalid. *See State v. Taylor*, 113 Ohio St.3d 297, 2007-Ohio-1950, 865 N.E.2d 37, ¶ 3, 11, and 16; *State v. Williams,* 8th Dist. Cuyahoga Nos. 104078 and 104849, 2017-Ohio-2650, ¶ 21-22*; State v. Ealom,* 8th Dist. Cuyahoga No. 91455, 2009-Ohio-1365, ¶ 5; *State v. Cox*, 3d Dist. Union No. 14-06-47, 2007-Ohio-6023, ¶ 18; *State v. Silvers*, 181 Ohio App.3d 26, 20098-Ohio-687, 907 N.E.2d 805, ¶ 15 (2d Dist); *State v. Lloyd*, 6th Dist. Erie Nos. E-10-055 and E-10-056, 2011-Ohio-2964, ¶ 18.

{¶23}    R.C. 2929.13(F)(6) requires a mandatory prison term for any offense that is a first- or second-degree felony when the defendant has a prior conviction for a first- or second-degree felony.   Here, Kinney was subject to a mandatory prison term for each of the six first-degree felonies because of his prior second-degree-felony conviction for burglary.   When an offender is sentenced to a mandatory prison sentence, it carries additional ramifications, as the offender will not be eligible for community-control sanctions or judicial release or certain other reductions in sentence.  *State v. Cruz*, 8th Dist. Cuyahoga No. 96999, 2012-Ohio-1943, ¶ 10.

{¶24}    The record reflects that Kinney's ability to file for judicial release was a factor in his decision to plead guilty.   Although the trial court clarified that Kinney would be required to serve mandatory time on the underlying first-degree felonies, both the trial court and the amended plea form incorrectly stated that only three years of the three-to-11-year term was mandatory, when in fact any prison term imposed within this range would be mandatory time.   Although Kinney stated that he understood the time on the underlying offenses was mandatory, he could not have fully appreciated the effect of his pleas, because the trial court, defense counsel, and the prosecuting attorney repeatedly told Kinney that the mandatory time on the underlying first-degree-felony offenses would not affect his sentence or his eligibility for judicial release.  They assured

Kinney that he would still be eligible to file for judicial release after serving the mandatory 18 years on the gun specifications. This advisement was legally erroneous. Any time the trial court imposed on the underlying first-degree-felony charges was also mandatory time that Kinney would have to serve without judicial release. R.C. 2929.13(F)(6); *Ware*, 141 Ohio St.3d 160, 2014-Ohio-5201, 22 N.E.3d 1082, at ¶ 11. Because the trial court failed to accurately explain the mandatory nature of the time Kinney would serve on the underlying first-degree felonies, it failed to substantially comply with Crim.R. 11.

{¶25}   Kinney, however, must show that he suffered prejudice from the trial court's legal misadvisement.   That is, he must demonstrate that he would not have pleaded guilty absent the trial court's erroneous advisement as to the sentence.  We recognize that the amended plea form incorrectly stated that Kinney would be subject to 36 years of mandatory prison time:  three years of mandatory time on each of six first-degree-felony counts and three years for each accompanying gun specification.   The record reflects, however, that Kinney did not sign the amended plea form and that the form incorrectly stated that only three years of the three-to-11-year prison term for the underlying first-degree felonies was mandatory prison time.  Moreover, the record reflects that Kinney relied on the trial court's assurances about the nature of the mandatory terms at the plea hearing.

{¶26}   The state argues that Kinney cannot establish prejudice because, although displeased with the possible penalties he faced, he repeatedly stated that he did not want to reject his guilty pleas and proceed to trial.   We disagree.   Kinney's statements that he did not want to proceed to trial were made immediately after the trial court's assurances that the imposition of mandatory prison terms on the underlying offenses would not affect his sentence or his eligibility to apply for judicial release. The

trial court told Kinney that nothing had changed after its additional advisement and that Kinney would still be eligible to apply for judicial release after he had served 18 years on the gun specifications. Because Kinney was ultimately sentenced to 34 years in prison, 33 years of which was mandatory time, when he was repeatedly reassured by the trial court that he would be eligible to apply for judicial release after 18 years, we hold he has demonstrated prejudice. *See State v. Bryant*, 4th Dist. Meigs No. 11CA19, 2012-Ohio-3189, ¶ 13-17; *see also State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 39 (holding that the defendant's plea was not knowingly, voluntarily, or intelligently made given the trial court's expanded, but inaccurate explanation of the law). We, therefore, sustain his first assignment of error.

{¶27} Our resolution of Kinney's first assignment of error has rendered moot his second assignment of error in which he argues that his sentence is contrary to law because the trial court failed to merge as allied offenses of similar import the two aggravated-burglary, two aggravated-robbery, and two kidnapping offenses, and because it failed to make the necessary findings before imposing consecutive sentences. *See* App.R. 12(A)(1)(c). We hold that the trial court erred in accepting Kinney's guilty pleas, because the court failed to substantially comply with Crim.R.11. We, therefore, reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion and the law.

Judgment reversed and cause remanded.

**MOCK, P.J.,** and **MILLER, J.**, concur.

Please note:

The court has recorded its own entry this date.

15